IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
SEP 1 6 2026
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. |
| v. | ) | |
| | ) | |
| ARTEMUS JACKSON, | ) | 4:26CR445 HEA/RHH |
| | ) | |
| Defendant. | ) | |

**<u>INDICTMENT</u>**

**THE GRAND JURY CHARGES:**

**<u>COUNTS 1 – 4</u>**
**MAIL FRAUD**

A. <u>INTRODUCTION</u>

At all times relevant to the Indictment:

1. The defendant, **ARTEMUS JACKSON,** (hereinafter referred to as "**JACKSON**"), was the Maintenance Supervisor for the Missouri Department of Transportation ("MoDOT") at its maintenance facility located in Normandy, Missouri. **JACKSON** began his employment with MoDOT on December 9, 2013, was promoted to Maintenance Supervisor on October 1, 2022, and was terminated on July 24, 2026. In his position, **JACKSON** was provided one and more MoDOT purchase cards, issued as VISA credit cards through United Missouri Bank ("UMB"). **JACKSON** was authorized to use the MoDOT purchase cards solely for legitimate purchases of equipment and materials for use in the operations of MoDOT, not for his own personal use.

B. <u>SCHEME TO DEFRAUD</u>

3. Beginning during in or about December, 2022 and continuing through in or about July, 2026, both dates being approximate and inclusive, in the Eastern District of Missouri and elsewhere, defendant,

**ARTEMUS JACKSON,**

devised, intended to devise, and knowingly participated in a scheme to defraud and obtain money from The Missouri Department of Transportation and the State of Missouri, in an approximate amount of $79,785.07, by means of materially false and fraudulent pretenses, representations, and promises.

4. It was a part of his scheme that, on one and more occasions, **JACKSON** used one of his MoDOT issued UMB VISA credit cards to make purchases of personal items, totaling approximately $50,461.07, unrelated to the legitimate business and operations of MoDOT. These personal use credit card purchases were made by **JACKSON** without the knowledge and authority of MoDOT and its administrators. In order to conceal this aspect of his scheme, **JACKSON** made false entries and false edits in one and more third-party vendor invoices falsely recording that these transactions were for legitimate MoDOT expenses. **JACKSON** then approved by signature the transactions for payment by MoDOT. These falsely edited third-party vendor invoices were then provided by **JACKSON** to his MoDOT supervisor in order to deceive and trick the supervisor into believing that the purchases were legitimate when, in fact, the purchased items were for **JACKSON's** personal use, unrelated to the legitimate operations of MoDOT. Along with the falsely altered third-party vendor invoices, **JACKSON** submitted the related UMB VISA credit card statements to his MoDOT supervisor for payment. **JACKSON** falsely certified on each of these related UMB VISA credit card statements, "I Certify that all charges are accurate and complete, are for official State Business, and in accordance with all State and MoDOT Purchasing and payment regulations," when, in fact, one and more of the charges were for **JACKSON's** personal items, unrelated to the legitimate operations of MoDOT. Relying upon these falsely edited and altered third-party invoices and falsely certified UMB VISA credit card statements, MoDOT unwittingly paid the related UMB issued VISA credit card charges using State of Missouri funds. **JACKSON** made approximately 248 unauthorized purchases for personal use items and expenses unrelated to the legitimate operations of MoDOT using one and more of the UMB VISA credit cards issued to **JACKSON** by MoDOT, totaling approximately $50,461.07.

5. The personal items purchased by **JACKSON** using the MoDOT issued VISA credit cards included, but were not limited to, accessories and equipment for his personal Yamaha Raptor ATV and Suzuki motorcycle; accessories and equipment for his personal GMC Sierra 1500 truck; men's cologne; men's watches; men's clothing and shoes; and, various items of personal electronic equipment.

6. As a further part of his scheme, on or about May 5, 2026, **JACKSON** used his MoDOT issued VISA credit card to purchase an Exmark mower, serial number 420497339 from Art's Lawn Mower Shop in Florissant, Missouri for $9,954.00. On or about May 16, 2026, **JACKSON** obtained a MoDOT purchase order to purchase a second Exmark mower, serial number 42022917 from Art's Lawn Mower Shop in Florissant, Missouri for $13,959.00. Both mowers were transported to the MoDOT maintenance facility in Normandy, Missouri where they were secured. On or about May 17, 2026, **JACKSON** entered the MoDOT facility after hours without authority and stole both Exmark mowers, falsely staging the scene as if it was a burglary committed by an unknown subject. The theft of the mowers was discovered on May 18, 2026 by other MoDOT employees, and the Missouri State Highway Patrol responded to investigate.

7. On May 26, 2026, MoDOT employees from the Audits and Investigations Unit travelled to the Normandy, Missouri Maintenance Facility to conduct an investigation into the purported stolen mowers. During that investigation, the Audits and Investigations Unit questioned **JACKSON** concerning the layout of the facility and other basic questions concerning the alleged break in and stolen mowers. During the next day, May 27, 2026, concerned that his involvement in the theft of the mowers would be discovered, **JACKSON** moved the mowers from where he had previously concealed them in a heavily wooded area to the shoulder of Interstate 70 at Hanley Road, not far from the Normandy maintenance facility, and left a handwritten note on one of the mowers, "NORMANDY! MOWERS! MODOT!!!" **JACKSON** also telephoned the MoDOT Traffic Management Center located in Chesterfield, Missouri, using a fake voice and a fake name, and reported the location of the stolen mowers. **JACKSON** made additional telephone calls to the MoDOT Traffic Management Center in

his own name and falsely represented that he had been called by a local elected official who advised him that the MoDOT mowers were located along Interstate 70 and Hanley Road. Having no knowledge that **JACKSON** was actually involved in the theft of the mowers, MoDOT then called him out in his official position as Maintenance Supervisor to recover the mowers and return them to the maintenance facility.

8. It was a further part of his scheme that, on or about April 29, 2025, **JACKSON** used his MoDOT issued VISA credit card to purchase a fourteen-foot Big Tex Trailer, along with accessories, from Big Tex Trailer World in Wentzville, Missouri for a total price of approximately $5,411.00. That Big Tex Trailer was never conveyed to the MoDOT facility and was personally used by **JACKSON** unrelated to the legitimate operations of MoDOT. On May 28, 2026, during the MoDOT Audit and Investigations investigation into the missing mowers, MoDOT representatives conducted an inventory of equipment at the Normandy maintenance facility and noted that the Big Tex Trailer was missing. When questioned about the missing trailer, **JACKSON** falsely represented that the trailer was located at the MoDOT facility in Bellefontaine Neighbors, Missouri. Concerned that his theft of the trailer would be discovered, on May 29, 2026 **JACKSON** hauled the trailer from where he had it stored and left it in a location along Missouri Highway 367 (Lewis and Clark Boulevard) in Bellefontaine Neighbors, Missouri where it was subsequently recovered by the Bellefontaine Neighbors Police Department. Video camera surveillance in the area on that date prior to the trailer being recovered revealed **JACKSON** hauling the trailer behind his personal truck in the vicinity of where he abandoned the trailer, then revealed **JACKSON** still driving his truck but without the trailer behind.

C. THE MAILINGS

**COUNT 1**

9. On or about September 17, 2024, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud, and to

obtain money and property and in attempting to do so by means of false and fraudulent pretenses and representations, the defendant,

**ARTEMUS JACKSON,**

knowingly caused to be delivered by the United States Postal Service, according to the directions thereon, a Ronin Factory Truck Antenna for defendant's personal truck, ordered by defendant from Ronin Factory LLC using the MoDOT issued UMB VISA credit card ending in 5317, and shipped from Ronin Factory LLC, 2251 Las Palmas Drive, Carlsbad, California to defendant at the MoDOT Normandy maintenance facility, 1005 Bermuda Drive, St. Louis, Missouri.

In violation of Title 18, United States Code, Section 1341.

**COUNT 2**

10. On or about March 10, 2025, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud, and to obtain money and property and in attempting to do so by means of false and fraudulent pretenses and representations, the defendant,

**ARTEMUS JACKSON,**

knowingly caused to be delivered by the United Parcel Service, according to the directions thereon, a set of Maxxis Rzr Rear ATV Tires and Wheels for defendant's personal ATV, ordered by defendant from ATV Galaxy using the MoDOT issued UMB VISA credit card ending in 1747, and shipped from ATV Galaxy, 16951 Armstrong Avenue, Irvine, California to defendant at the MoDOT Normandy maintenance facility, 1005 Bermuda Drive, St. Louis, Missouri.

In violation of Title 18, United States Code, Section 1341.

**COUNT 3**

11. On or about August 4, 2026, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud, and to obtain

money and property and in attempting to do so by means of false and fraudulent pretenses and representations, the defendant,

**ARTEMUS JACKSON,**

knowingly caused to be delivered by the United Parcel Service, according to the directions thereon, a set of Yamaha YFZ450 2006-13 Raptor 700 2006-24 Regular Travel +.5 A-Arms for defendant's personal ATV, ordered by defendant from Houser Racing on March 6, 2026 using the MoDOT issued UMB VISA credit card ending in 1747, and shipped from Houser Racing, 1579 Marion-Waldo Road, Marion, Ohio to defendant at the MoDOT Normandy maintenance facility, 1005 Bermuda Drive, St. Louis, Missouri.

In violation of Title 18, United States Code, Section 1341.

## COUNT 4

12. On or about August 4, 2026, within the Eastern District of Missouri and elsewhere, for the purpose of executing and attempting to execute the above-described scheme to defraud, and to obtain money and property and in attempting to do so by means of false and fraudulent pretenses and representations, the defendant,

**ARTEMUS JACKSON,**

knowingly caused to be delivered by the United Parcel Service, according to the directions thereon, a Universal ATV Handle Bar Clamp, Yamaha Raptor 700 Steering Stem, and a Yamaha YFZ450 Raptor 700 Steering Stem Bottom for defendant's personal ATV, ordered by defendant from Houser Racing on March 6, 2026 using the MoDOT issued UMB VISA credit card ending in 1747, and shipped from Houser Racing, 1579 Marion-Waldo Road, Marion, Ohio to defendant at the MoDOT Normandy maintenance facility, 1005 Bermuda Drive, St. Louis, Missouri.

In violation of Title 18, United States Code, Section 1341.

## FORFEITURE ALLEGATION

The United States Attorney further alleges there is probable cause that:

1. Pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Section 1341 as set forth in Counts 1 through 3, the defendant shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation.

2. Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation, which is at least $50,461.07.

3. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

______________________________
FOREPERSON

THOMAS C. ALBUS
United States Attorney

______________________________
HAL GOLDSMITH, #32984MO
Assistant United States Attorney